UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TORRY R. WILLIAMS,<br>A-Number: 200-506-039<br><br>          Petitioner,<br><br>     v.<br><br>WARDEN OF THE GOLDEN STATE<br>ANNEX DETENTION FACILITY, et al.,<br><br>          Respondents. | Case No.: 1:26-cv-00695-KES-FJS (HC)<br><br>ORDER DENYING MOTION FOR COUNSEL<br>[ECF No. 3]<br><br>FINDINGS AND RECOMMENDATION TO<br>GRANT PETITION FOR WRIT OF HABEAS<br>CORPUS IN PART<br><br>[10-DAY DEADLINE] |

Petitioner is an immigration detainee proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Petitioner filed the instant petition on January 26, 2026. (ECF No. 1.) On February 27, 2026, Respondent filed a response to the petition. (ECF No. 9.) Petitioner did not file a reply. On March 23, 2026, the case was reassigned to the undersigned. (ECF No. 12.)

Petitioner challenges his continued detention by the Bureau of Immigration and Customs Enforcement ("ICE"). He claims his prolonged detention without a bond hearing violates his substantive and procedural due process rights under the Fifth Amendment. He further claims he should be immediately released. He also seeks an injunction against potential third country removal.

1

For the reasons discussed below, the Court will recommend the petition be granted in part and Respondents be directed to provide Petitioner with another bond hearing before an immigration judge.

I.      BACKGROUND

Petitioner is a native and citizen of Jamaica who entered the country at an unknown place and time. (ECF No. 9 at 4, 9.) On July 29, 2010, Petitioner adjusted his status to that of lawful permanent resident. (ECF No. 9 at 4.)

Petitioner has an extensive criminal history spanning the last two decades. (ECF No. 9 at 10.) From April 19, 2006, through September 5, 2024, he has sustained numerous convictions for driving under the influence, domestic violence, false imprisonment, disturbing the peace, and various traffic offenses. (ECF No. 9 at 14-42.) On August 8, 2014, Petitioner was convicted of two counts of corporal injury to a spouse/cohabitant/child's parent in violation of Cal. Penal Code § 273.5(a). Consequently, he was charged with removability. (ECF No. 9 at 4, 7.) On February 18, 2025, Petitioner was arrested and detained by ICE after he completed his sentence in Humboldt County jail on his most recent conviction for domestic violence. (ECF No. 9 at 10-11.)

On February 21, 2025, the Government initiated removal proceedings charging Petitioner as removable under Immigration and Nationality Act ("INA") § 237(a)(2)(E)(i). (ECF No. 9 at 126.) Respondent contends Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) for having been convicted of crimes involving moral turpitude. (ECF No. 9 at 2.) Specifically, Respondent argues that Petitioner's convictions of corporal injury to his spouse qualify as crimes involving moral turpitude under the modified categorical approach. (ECF No. 9 at 2.) *See Grageda v. INS*, 12 F.3d 919, 922 (9th Cir. 1993) (holding that "spousal abuse under section 273.5(a) is a crime of moral turpitude"), *superseded by statute on other grounds*; *see also* Immigration Judge Bond Decision, (ECF No 9 at 126-131.) Respondent argues that detention is mandatory pursuant to 8 U.S.C. § 1226(c).

On May 27, 2025, Petitioner received a bond hearing before an immigration judge. (ECF No. 9 at 126.) The immigration judge denied Petitioner's request for bond on two grounds. First, the immigration judge determined he lacked jurisdiction. (ECF No. 9 at 127.) The immigration judge found that Petitioner's two convictions for willfully inflicting corporal injury upon a spouse resulting

in a traumatic condition in violation of Cal. Penal Code § 273.5(a) constituted crimes of moral turpitude, and commission of two such crimes rendered Petitioner subject to mandatory detention under section 1226(c). (ECF No. 9 at 127-128, 131.) Second, the immigration judge determined, alternatively, that Petitioner's release would present a danger to the community. (ECF No. 9 at 128-131.) Petitioner appealed the determination to the Board of Immigration Appeals ("Board"). (ECF No. 9 at 122-123.) The Board upheld the decision based on Petitioner's danger to the public, but did not address the immigration judge's alternative basis that Petitioner was subject to mandatory detention under section 1226(c). (ECF No. 9 at 122-23.)

Petitioner is currently in removal proceedings. (ECF No. 9 at 135.) His next hearing is scheduled for July 27, 2026. EOIR Automated Case Information, No. 200-506-039, *available at* acis.eoir.justice.gov/en (lasted visited April 27, 2026). Petitioner has remained in custody since February 18, 2025, a period of fourteen months.

II.    DISCUSSION

A.    Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). Pertinent here, the Supreme Court specifically directed that federal courts have jurisdiction to review a constitutional challenge to a non-citizen's detention. *See Demore v. Kim*, 538 U.S. 510, 517 (2003).

B.    Mandatory Detention under 8 U.S.C. § 1226(c)

Respondents argue that Petitioner is detained pursuant to 8 U.S.C. § 1226(c). Section 1226(c)(1)(A) mandates detention of any alien convicted of more than one crime involving moral turpitude pursuant to 8 U.S.C. § 1182(a)(2). While a violation of Cal. Penal Code § 273.5(a) is not a categorical crime involving moral turpitude, Petitioner's convictions for violating section 273.5(a) qualify under the modified categorical approach, because the victim in both cases was his spouse.

3

(ECF No. 9 at 127.) Spousal abuse under section 273.5(a) is considered a crime of moral turpitude. *Grageda v. INS*, 12 F.3d 919, 922 (9th Cir. 1993). Thus, Respondent's position that Petitioner is subject to mandatory detention under § 1226(c) is correct. Section 1226(c) "carves out a class of aliens for whom detention is mandatory." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022). "[Immigration and Customs Enforcement] may only release a person detained pursuant to [section 1226(c)] if necessary for witness protection purposes." *Id.* (citations omitted). "[T]he Government's authority to detain a noncitizen under [section 1226(c)] likewise applies during the administrative and judicial phases of removal proceedings." *Avilez v. Garland*, 69 F.4th 525, 535 (9th Cir. 2023). "Consequently, noncitizens subject to mandatory detention under [section 1226(c)] are not statutorily eligible for release on bond during the judicial phase of the proceedings, except under the narrow circumstances defined by § 1226(c)(2)." *Id.* at 535-36. Those "narrow circumstances" have no application to Petitioner here.

### C.   Due Process in Prolonged Immigration Detention

Nevertheless, Petitioner contends his detention has become unreasonably prolonged because there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner contends he has been unreasonably detained for fourteen months without a substantive bond hearing in violation of his due process rights. He argues that due process requires he should be released from custody.

Although the Ninth Circuit has clarified that there is no statutory right to a detention hearing under section 1226(c), whether the Due Process Clause imposes a right to a detention hearing is an open question in this Circuit. *Avilez*, 69 F.4th at 538. *See also Rodriguiez Diaz*, 53 F.4th at 1201 ("[I]t remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute") (emphasis in original). There is a split among the circuits that have addressed whether the Due Process Clause affords section 1226(c) detainees a right to a bond hearing. *Compare Black v. Decker*, 103 F.4th 133, 148-50, 155 (2d Cir. 2024), *with Banyee v. Garland*, 115 F.4th 928, 933-34 (8th Cir. 2024).

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306

(1993). The Supreme Court nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." *Demore*, 538 U.S. at 531; *see also Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure"). Morevoer, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522, *quoted in Rodriguez Diaz*, 53 F.4th at 1206.

There is an open question on the appropriate test to use when evaluating a due process claim in immigration detentions like Petitioner's. The Ninth Circuit has noted that many courts have applied the *Mathews*[1] test in considering due process challenges in the immigration context. *See Rodriguez Diaz*, 53 F.4th at 1206 (noting that the government sought to use a substitute for the *Mathews* test that was "not specific" but "focuses more exclusively on the government's asserted interests in detaining aliens who are subject to removal"). Yet the Supreme Court has resolved some constitutional challenges to immigration detention without invoking *Mathews*. *See, e.g., Demore*, 538 U.S. at 523, 526–29; *Dusenbery v. United States*, 534 U.S. 161, 168 (2002) ("[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims"). *But see Rodriguez Diaz*, 53 F.4th at 1206 (noting that the Supreme Court applied *Mathews* in considering a due process challenge to an immigration exclusion hearing). Still, many district courts in the Ninth Circuit, including this court, used the *Mathews* test in evaluating whether due process entitles a petitioner to a bond hearing when subjected to prolonged detention. *See, e.g., A.E. v. Andrews*, 1:25-cv-00107-KES-SKO, 2025 WL 1424382 (E.D. Cal. May 16, 2025); *Jensen v. Garland*, No. 21-cv-1195-CAS (AFM), 2023 WL 3246522, at *4 (C.D. Cal. 2023); *Galdillo v. U.S. Dep't of Homeland Sec.,* No. EDCV 21-724 JGB (KKx), 2021 WL 4839502, at *3 (C.D. Cal. 2021); *Jimenez v. Wolf*, No. 19-cv-7996-NC, 2020 WL 510347, at *3 (N.D. Cal. 2020); *Riego v. Scott*, No. 24-cv-1162-SKO (HC), 2025 WL 660535 (E.D. Cal. 2025). And in *Rodriguez Diaz* the Ninth Circuit used the *Mathews* test and assumed (without deciding) that it applied to a due process claim for a second bond hearing in a section 1226(a) detention. 53 F.4th at 1206-07. Thus, the Court finds application of the *Mathews* test in this case appropriate where Petitioner seeks a second bond hearing in a section 1226(c) detention.

---

[1] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

Under the *Mathews* test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." *Mathews*, 424 U.S. at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

In the first factor, the Court evaluates Petitioner's private interest in being free from detention against the government's stated interests in protecting the public from a risk of danger and any risk of flight to avoid removal. Here, Petitioner has been detained approximately fourteen months and last received a bond hearing over twelve months ago. When analyzing a detention under section 1226(a) of a similar duration, the Ninth Circuit "assume[d] that [petitioner's] detention qualifies as 'prolonged' in a general sense." *Rodriguez Diaz*, 53 F.4th at 1207 (citing, *inter alia*, *Diouf II*, 634 F.3d at 1091). A noncitizen's private interest in "freedom from prolonged detention" is "unquestionably substantial." *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011).

In *Rodriguez Diaz*, the Ninth Circuit held that "in evaluating the first prong of the *Mathews* analysis, it is not sufficient to simply count the months of detention and leave it at that." 53 F.4th at 1208. Instead, the analysis should consider "[t]he process received during this time, the further process that was available to [the alien], and the fact that his detention was prolonged due to his decision to challenge his removal order must also be considered." *Id*. The Ninth Circuit further held that it was "important not to overstate the strength of Petitioner's showing under the first *Mathews* factor." 53 F.4th at 1213. In this case, Petitioner was given a bond hearing on April 17, 2025, where it was determined that he posed a risk of danger to the public. (ECF No. 9 at 135.) Respondent argues, and Petitioner does not contest, that Petitioner had the opportunity to present evidence and arguments at that earlier bond hearing. Nevertheless, the hearing was over one year ago, and it appears no further inquiry into the circumstances of Petitioner's prolonged detention has occurred. In addition, Respondents do not attribute the prolonged detention to Petitioner's own actions. *Cf. Rodriguez Diaz,* 53 F.4th at 1207-08; *Demore*, 538 U.S. at 530-31. And unlike *Rodriguez Diaz*, Petitioner's interests

are not "further diminished by the fact that he is subject to an order of removal from the United States." 53 F.4th at 1208. Instead, Petitioner's removal proceedings are ongoing.[2] Parra Jamies Decl. ¶ 11 (ECF No. 9). On balance, the first *Mathews* factor tips in favor of Petitioner.

In the second factor, the Court considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," *Mathews*, 424 U.S. at 335. The "risk of an erroneous deprivation of [a petitioner's] interest is high" where "[h]e has not received any bond or custody redetermination hearing[.]" *Jimenez*, 2020 WL 510347, at *3. In this case, however, Petitioner has received a bond hearing where an immigration judge inquired into his detention and concluded he posed a risk of danger. This inquiry took place over one year ago, and there has been no inquiry since then. *Rodriguez Diaz* held that a section 1226(a) detainee who had also received an earlier bond hearing before an immigration judge could not tip this second *Mathews* factor in his favor because "the agency's decision to detain [petitioner] was subject to numerous levels of review, each offering [him] the opportunity to be heard by a neutral decisionmaker." 53 F.4th at 1210. So too here. Yet the right to seek an additional bond hearing under section 1226(a), *Rodriguez* Diaz, 53 F.4th at 1209 (citing 8 C.R.F. § 1003.19(e)), does *not* apply to Petitioner's detention under section 1226(c). While the appellate options available to Petitioner following his earlier bond hearing mitigate the risk of an erroneous deprivation of rights, *see id*. at 1209, the absence of a means of further testing the propriety of detention should circumstances change increases the risk of an erroneous deprivation. A second bond hearing held more than twelve months after the initial bond hearing would inject an additional safeguard that ameliorates the increasing risk of an erroneous deprivation following a singular bond hearing based on circumstances existing at a singular point in time. The Court concludes, therefore, that the probable value of offering a further bond hearing more than twelve months after the initial bond hearing is high.

In the third factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would

---

[2] The parties have not advised of any change in Petitioner's removal status.

entail." *Mathews*, 424 U.S. at 335. The government's aim of "protecting the public from dangerous criminal aliens" and "increas[ing] the chance that, if ordered removed, the aliens will be successfully removed" are "interests of the highest order that only increase with the passage of time." *Rodriguez Dias*, 53 F.4th at 1208 (quotations omitted). As other courts have recognized, however, the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." *Zagal-Alcaraz v. ICE Field Office Director*, No 19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. March 25, 2020) (collecting cases). Here, the government's interest is tied to Petitioner's prior criminal history and a previous determination by an immigration judge that he posed a risk of danger. The argument has merit, but these arguments can be advanced (or, in this case, re-advanced) compellingly at a bond hearing. Providing a bond hearing would not undercut the government's asserted interest in protecting the public or accomplishing removal; it provides a forum to substantiate those interests. Given "the minimal cost of conducting a bond hearing, and the ability of the [immigration judge] to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified," courts have concluded that "the government's interest is not as weighty as [p]etitioner's." *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019), *quoted in Zagal-Alcaraz*, 2020 WL 1862254, at *7. The imposition of a second bond hearing one year after a previous bond hearing in the face of a regulatory framework that does not allow Petitioner to seek a second bond hearing does not undermine the weighty and substantial interests the government pursues here.

On balance, the *Mathews* factors weigh in Petitioner's favor and outweigh the government's interest in further detention without another inquiry into whether circumstances have changed or whether Petitioner continues to present a flight risk or danger to the community. The Court thus finds that a second bond hearing should be provided.

### D.  Burden of Proof at Bond Hearing

The question is now who should bear the burden of proof at the bond hearing. As other courts have also concluded, the undersigned finds that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond" and that the bond hearing must comport with the other requirements of *Singh v. Holder*, 638 F.3d 1196, 1208

(9th Cir. 2011). *See Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) (stating that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" with respect to a bond hearing for a noncitizen detained under § 1226(c)). In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017).

E.   Third Country Removal

Petitioner also raises claims concerning third country removal. He claims his potential removal to a third country without notice and meaningful opportunity to respond violates his procedural due process rights. (ECF No. 1 at 19.) He also claims his potential removal to a third country constitutes unconstitutional punishment. (ECF No. 1 at 19.) Neither claim is ripe. There is no evidence in the record that Respondents have any intention to remove him to a third country. And Petitioner does not claim that Respondents have advised him of a possibility of removal to a third country.

III.   ORDER ON MOTION FOR COUNSEL

On January 26, 2026, Petitioner filed a motion for appointment of counsel. 18 U.S.C. § 3006A(a)(2)(B) authorizes the appointment of counsel at any stage of the case if "the interests of justice so require." *See* Rule 8(c), Rules Governing Section 2254 Cases. In this case, the Court is recommending the petition be granted in part. Therefore, the Court does not find that the interests of justice require the appointment of counsel at the present time. Petitioner's motion for counsel is DENIED without prejudice.

IV.   RECOMMENDATION

For the foregoing reasons, the Court hereby RECOMMENDS that the petition for writ of habeas corpus be GRANTED in part and that Respondents be DIRECTED to provide Petitioner with a bond hearing within twenty-one (21) days before an immigration judge wherein the Government must demonstrate by clear and convincing evidence, in accordance with the requirements of *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011), that Petitioner is not a flight risk or a danger to the

community, or in the alternative, release Petitioner on appropriate conditions of supervision. The Court does not recommend granting any of the other forms of habeas relief Petitioner seeks.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within ten (10) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. *Id*. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:   **April 28, 2026**

_____
UNITED STATES MAGISTRATE JUDGE